IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Schimes,                          :
                     Appellant           :
                                         :
          v.                             :    No. 1526 C.D. 2018
                                         :    SUBMITTED: June 21, 2019
City of Scranton Non-Uniform             :
Pension Board; Mayor William             :
Courtright, and City of Scranton         :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                              FILED: August 1, 2019


Appellant Joseph Schimes (Schimes), appeals *pro se* from the Court of Common Pleas of Lackawanna County's (Trial Court) October 3, 2018 order affirming the City of Scranton Non-Uniform Pension Board's (Board) March 3, 2017 adjudication. The Board determined it had been improperly making double pension payments to Schimes and other former City of Scranton (City) employees for a number of years. The Board elected to remedy this mistake by halving the dollar amount of future pension payments to those individuals. After thorough review, we affirm.

## I. Background

This action is the latest salvo in a long-running saga concerning the pension benefits Schimes receives as a result of his years of employment with the City. In December 2002, the City extended a one-time offer for early retirement for qualified

employees. The proposal allowed any employee who had 25 years or more of service to the City and was less than 55 years of age to retire no later than December 31, 2002, with pension and healthcare benefits. Schimes believed he could purchase up to 10 years of pension time, as well as pension time for his military service. Therefore, he concluded that he could meet the 25-year service requirement and qualify for the early retirement offer. The offer appealed to him because of the healthcare benefits. Schimes' wife was seriously ill at the time, and it was important to him to maintain healthcare benefits for her. Accordingly, Schimes applied for the early retirement incentive. At the time of his retirement, Schimes was 50 years old. *Schimes v. Scranton Non-Uniform Pension Bd.* (Pa. Cmwlth., No. 193 C.D. 2006, filed Dec. 18, 2006), slip op. at 2-3.

The Board subsequently denied Schimes' request to purchase additional years of service towards his pension, which rendered him ineligible for a City pension at that point in time. *Id.* at 3-5. Schimes appealed the Board's denial to the Trial Court, which reversed. The Trial Court found the Board's denial was not supported by substantial evidence. Further, contrary to the Board's determination, the Trial Court found Schimes *was* permitted by the applicable collective bargaining agreement to purchase up to 10 additional years of service credit. *Id.* at 5-6. This Court affirmed the Trial Court via an unpublished decision in December 2006. *Id.* at 10.

Following our decision, the City agreed to extend its early retirement offer to additional employees who were similarly situated to Schimes. A number of employees submitted early retirement applications in 2007 in response to the Board's offer.

In the fall of 2014, the Board received a question relating to a double pension benefit that a retiree was allegedly receiving. Upon investigation, the Board learned

2

that in 2003, its Secretary had sent two letters to the City's pension plan administrator stating that the City had passed ordinances authorizing retroactive pension payment increases to former employees who retired pursuant to the 2002 early retirement offer. However, no ordinances had been properly passed, and thus, the payment increases were not legally authorized. Tr. Ct. Op., 10/3/18, at 16-17.

The Pennsylvania Department of Auditor General (Department) then conducted a review of the pension payments made pursuant to the 2002 early retirement offer and the 2007 extension. In June of 2015, the Department issued a report in which it concluded that the City "failed to properly analyze, document, and implement the retirement benefit incentive offered to its [ ] non-uniform employees who retired in 2002 and subsequently in 2007." *Id.* at 3-4. The Department "found no authorization or City Ordinance to support any double pension payments to City . . . employees who retired in either 2002 or 2007." *Id.* The Department concluded:

A. The City did not obtain and review a cost study of the actual plan benefit modification scenario that it provided to the 2002 retirees, when it should have done so prior to the retirement incentive offer, prior to the 2002 retirements, and prior to the ordinances modifying the plan benefits. Therefore, Plan officials failed to comply with Act 205[1] by

---

[1] Act 205 is formally known as the Municipal Pension Plan Funding Standard and Recovery Act, Act of December 18, 1984, P.L. 1005, *as amended,* 53 P.S. §§ 895.101-895.1131.

The General Assembly enacted Act 205 as "an Act mandating actuarial funding standards for all municipal pension systems; establishing a recovery program for municipal pension systems determined to be financially distressed; providing for the distribution of the tax on premiums of foreign fire insurance companies; and making repeals." [Section 101 of Act 205,] 53 P.S. § 895.101. Its purpose was to strengthen municipal pension plans "by requiring actuarially[ ]based current funding standards and by establishing state-aided, voluntary remedial rules to aid seriously under[-]funded pension plans in achieving compliance with the standards." *City of Philadelphia v. District Council 33, American Federation of State, County & Municipal Employees, AFL–CIO, . . .* 598 A.2d 256, 261 ([Pa.] 1991).

3

not properly and timely evaluating the cost and long-term effects of the retirement incentive on the Plan.

B. The City failed to authorize the doubling of pension benefits for the 2002 retirees. While it appears the City intended to offer a retirement incentive, the doubling of pension benefits was not approved in any of the four ordinances related to the 2002 retirees, as required by Act 400.[2]

C. Based on a 2006 Commonwealth Court decision and on the subsequent advice of its solicitor, the . . . Board offered additional employees an opportunity to retire in 2007 and to receive the double-pension benefits paid to the 2002 retirees. It did so without first considering the impact of this additional cost on the Plan.

*Id.* The Department recommended that the City and the Board determine who was actually eligible for the incentive, whether the Board and the City were obligated to continue paying double pension benefits, and whether any amounts paid should be recouped by the City. *Id.*

Hearings were conducted in July 2016. The hearing officers concluded there was no legal foundation for doubling the pension payments to the 2002 and 2007 retirees, and that the Board was entitled to correct the error going forward. However, the hearing officers found it would be unreasonable for the Board to recoup past overpayments. The Board adopted the hearing officers' recommendations. *Id.* at 3-4.

Schimes appealed the Board's decision to the Trial Court, naming William Courtright, Mayor of Scranton (Mayor), as well as the City and the Board, as "respondents." The Mayor and the City filed preliminary objections, on the basis

---

*City of Erie v. Int'l Ass'n of Firefighters Local 293*, 836 A.2d 1047, 1049 (Pa. Cmwlth. 2003).

[2] Act 400 refers to sections 551 through 579 of what is known as the Second Class A City Code, Act of September 23, 1959, P.L. 970, *as amended*, 53 P.S. §§ 30551-30579, which permit the creation of a retirement system in such cities.

4

that neither of them was involved with the proceedings held by the hearing officers and, thus, neither could be named as a responsive party to Schimes' statutory appeal. The Trial Court agreed with this argument, sustaining the preliminary objections and dismissing both the Mayor and City from this matter on November 21, 2017. Tr. Ct. Op., 11/21/17, at 7-14.

In October 2018, the Trial Court affirmed the Board's adjudication in full. This appeal by Schimes followed.[3]

## II. Issues

Schimes raises five separate arguments for our consideration in his *pro se* brief, which we have reordered and streamlined for the sake of clarity and efficient disposition.[4]

First, Schimes asserts the Board's March 3, 2017 adjudication was unlawful and void. He contends three Board members – the Mayor, the president of City Council, and the City Controller – did not attend the public meeting at which the Board adopted the hearing officers' recommendations. Instead, they voted by proxy.

Second, Schimes contends the Board's solicitor conducted an improper investigation into the pension payments made to Schimes and other retirees. He insists the solicitor revealed "a conflict of interest" by issuing a legal opinion that

---

[3] The Trial Court did not direct Schimes to file a Concise Statement of Errors Complained of on Appeal, but nonetheless issued an order on January 4, 2019, stating that all of the issues raised by Schimes on appeal had been sufficiently addressed in the Trial Court's October 2018 memorandum opinion. Tr. Ct. Or., 1/4/19, at 1.

[4] When considering an appeal stemming from a local agency's adjudication, where a complete record was developed before said agency, our review is limited to determining whether the agency violated constitutional rights, committed errors of law, failed to adhere to statutory procedural requirements, or abused its discretion by issuing rulings and/or findings of fact that were not supported by substantial evidence. 2 Pa. C.S. § 754(b).

the double pension payments were proper, but then issuing a second legal opinion expressing the opposite conclusion.

Third, Schimes argues the Board did not have statutory authority under the Second Class A City Code to decrease the pension payments being made to him.

Fourth, Schimes insists the Trial Court erred by sustaining the preliminary objections filed by the City and the Mayor. Thus, the Trial Court incorrectly dismissed those parties from Schimes' statutory appeal.

Finally, Schimes asserts the Board's decision to halve his pension payments going forward was barred by the doctrine of *res judicata*. Schimes argues this Court's 2006 opinion affirming his ability to purchase additional years of pension service precluded reduction of his pension payments.

### III. Discussion

### A. Waiver

The Trial Court determined that Schimes waived his first and second issues, due to his failure to develop either one in the briefs he submitted in support of his statutory appeal. *See* Tr. Ct. Op., 10/3/18, at 37-39. The Court of Common Pleas of Lackawanna County Rules of Civil Procedure do not set forth the briefing requirements for statutory appeals. However, "[a]lthough not strictly bound by the Pennsylvania Rules of Appellate Procedure, the trial court, acting as an appellate court, may look to the Pennsylvania Rules of Appellate Procedure for guidance[.]" *King v. City of Philadelphia*, 102 A.3d 1073, 1077 (Pa. Cmwlth. 2014). The Trial Court apparently did so here. Schimes had an "affirmative duty to prosecute the appeal he filed." *Civil Serv. Comm'n of City of Philadelphia v. Wenitsky*, 521 A.2d 80, 82 (Pa. Cmwlth. 1987). Arguments not supported with legal analysis and citations of authority are waived. *See Berner v. Montour Twp.*, 120 A.3d 433 (Pa.

6

Cmwlth. 2015). Accordingly, we conclude that the Trial Court did not abuse its discretion by finding waiver.

With regard to Schimes' remaining arguments, we address each in turn.

**B. Pension Decreases under the Second Class A City Code**

In the event an inadvertent mistake results in any pension plan contributor or beneficiary receiving more or less than he should have received, Section 28 of the Second Class A City Code, 53 P.S. § 30578, vests the Board with the ability to correct the error by adjusting the pension payments made to the affected individual. As discussed above, there is ample information in the Board's record showing that Schimes had been receiving improperly large pension payments of twice the amount which was authorized by the applicable City ordinances. There is substantial evidence in the record supporting the Board's conclusion that these doubled payments were not purposefully made. Accordingly, the Board properly exercised its statutory powers to remedy this mistake. Schimes' argument to the contrary is without merit.[5]

**C. Dismissal of the City and Mayor**

Next, we agree with Schimes that the Trial Court erred by sustaining the preliminary objections of the City and the Mayor. The Pennsylvania Rules of Civil Procedure are not applicable to statutory appeals; thus, preliminary objections, the grounds for which are set forth in Pa. R.C.P. No. 1028, cannot be used as a vehicle for challenging such an appeal. *Appeal of Borough of Churchill*, 575 A.2d 550, 553 (Pa. 1990).

---

[5] Schimes also did not brief this argument before the Trial Court. However, the Trial Court did not declare it to be waived and, instead, addressed it on the merits. *See* Tr. Ct. Op., 10/3/18, at 20-23.

Even so, "[a]n appellate court may affirm the trial court [on] grounds different than those relied upon by the trial court where other grounds for affirmance exist." *Philadelphia Fed'n of Teachers v. Sch. Dist. of Philadelphia*, 109 A.3d 298, 321 n.35 (Pa. Cmwlth. 2015). Pursuant to the Local Agency Law, the proper appellee in an appeal from a local agency's adjudication *is the local agency itself. See* 2 Pa. C.S. §§ 752-54.

Here, as the Board rendered the decision which Schimes challenges, it is the only party Schimes could name as the appellee in this matter. Consequently, we affirm on this basis the Trial Court's November 21, 2017 decision to dismiss the City and the Mayor from Schimes' statutory appeal.[6]

## D. *Res Judicata*

Finally, we disagree with Schimes' contention that *res judicata* barred the Board from reducing his pension.

> *Res judicata* encompasses two related, yet distinct principles: technical *res judicata* and collateral estoppel. . . . Technical *res judicata* provides that where a final judgment on the merits exists, a future lawsuit on the same cause of action is precluded. . . . Collateral estoppel acts to foreclose litigation in a subsequent action where issues of law or fact were actually litigated and necessary to a previous final judgment.

*Stilp v. Com.*, 910 A.2d 775, 783 (Pa. Cmwlth. 2006) (internal citations omitted). "However, in order for either collateral estoppel or [technical] *res judicata* to apply, the issue of law or fact decided in the prior action must be identical to the one presented in the later action." *Blair v. Bureau of Prof'l & Occupational Affairs, State Bd. of Nursing*, 72 A.3d 742, 754-55 (Pa. Cmwlth. 2013).

---

[6] Schimes did not mention the Trial Court's November 21, 2017 ruling in his notice of appeal. Despite this, in situations where a trial court has issued interlocutory orders dismissing fewer than all appellees, claims, or defendants, "an appeal from the order dismissing the remaining claim[s] or part[ies] is sufficient to bring for review [those] earlier issued [interlocutory] orders." *K.H. v. J.R.*, 826 A.2d 863, 871 (Pa. 2003).

8

Such identity of issues does not exist here. Our 2006 decision dealt with whether Schimes could purchase service years to put towards the City's pension eligibility requirements, whereas the instant matter revolves around whether the Board could prospectively halve the dollar amount of Schimes' pension payments in order to cease making what it had concluded were legally impermissible double payments. Thus, Schimes' *res judicata* argument is without merit.

## IV. Conclusion

For the foregoing reasons, we affirm Trial Court's October 3, 2018 order, in full.

_____
ELLEN CEISLER, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Schimes, : 
              Appellant :: 
             : 
      v. : No. 1526 C.D. 2018
             : 
City of Scranton Non-Uniform : 
Pension Board; Mayor William : 
Courtright, and City of Scranton : 

# **O R D E R**

AND NOW, this 1st day of August, 2019, the Court of Common Pleas of Lackawanna County's October 3, 2018 order, which affirmed the City of Scranton Non-Uniform Pension Board's March 3, 2017 adjudication, is AFFIRMED.


_____
ELLEN CEISLER, Judge